## Curty v. Monnin.

*Will — Construction — Application of equitable principles — Disputed boundary.*

The legal construction of a will is for the court and when a boundary line marking certain devises to separate devisees will meet all the requirements of the will on either of two theories as to the beneficial interests intended to be devised, the court will not, with a view of equalizing the devises, adopt another line in application of equitable principles to the construction of the will which would lead to endless difficulties and include all the other devises. Such construction would be interpretation run mad.

Argued May 21, 1900. Appeal, No. 75, April T., 1900, by defendant, in suit of Louisa Curty against Joseph Monnin, from judgment of C. P. Crawford Co., Sept T., 1898, No. 134, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by BEAVER, J.

Trespass. Before THOMAS, P. J.

It appears from the evidence that on September 26, 1896, Francis Monnin died testate and his will was probated October 12, 1896. The controversy in this case arises out of the following portion of Francis Monnin's will:

"Item 3d. I give and bequeath to Louisa Curty about thirty acres off from the west side of my farm, commencing on the northwest corner by the land of Polly heirs and public road; thence east to a maple; thence south by Joseph Monnin's land

and along south line of Brawley's land and also to said Louisa Curty, five acres joining the twenty-five above described by the south and of the value of eighteen hundred dollars.

"Item 4th. I give and bequeath to Joseph Monnin forty-six (46) acres off the east side of the old farm with a barn on the line between said Joseph and Louisa Curty to be his."

Francis Monnin occupied and used in his lifetime a farm consisting of three adjoining parallel strips of land together with a block of five acres lying south of one of these strips. The strip first owned by him was the one on the extreme west — the homestead — described in the deed as twenty-five acres. He afterward bought the strip adjoining this on the east containing about twenty-one and one half acres. Immediately east of this last named piece was a third strip of land containing twenty-seven acres also used as a part of the farm. In the three pieces there were altogether about seventy-five acres and the fences between the pieces of land were removed. The title to the eastern twenty-seven-acre piece was in Virginia Monnin, an unmarried daughter of Francis Monnin and in his son Joseph, the plaintiff in error. The daughter owned an undivided two-thirds interest in said land and lived with her father. In November, 1890, the daughter died unmarried and intestate. Her estate was not settled and the father, inheriting a life estate in her interest in said land, continued to occupy and use the whole farm. There is evidence also that he supposed that instead of inheriting a life estate only, he had inherited his daughter's interest in the twenty-seven acres in fee.

All the lines bounding these several strips of land on the east and west are designated in the deeds as south lines, and they were, in fact, due south, though by the variation of the needle since the lines were run, they now vary from three to five degrees from the present magnetic south.

Several years after the death of his daughter and while in possession of these pieces of land, Francis Monnin made a will. He willed to his daughter, Louisa Curty, the west side of the farm, being the homestead, west of a line running south from a maple tree. In another clause of his will he devised to his son, Joseph Monnin, plaintiff in error, forty-six acres off the east side of his farm, "the barn on the line to be his."

After the death of Francis Monnin and after Louisa Curty

had gone into possession of the homestead, Joseph Monnin procured George Long, a surveyor, to run a line south from the maple tree, that is, parallel to the other boundary lines. This line ran through a small barn and divided the whole farm in such a way that there were twenty-six and one half acres west of it (not including the five acres not in controversy) and forty-eight and one half acres east of it, including the twenty-seven acres called the Virginia Monnin land. At the south end of this line Joseph Monnin drove a post firmly into the ground in the presence of a number of witnesses, remarking that he was driving it in so that it could not be moved. Some time afterward Joseph built a fence within one foot of this line along its southern end. Mrs. Curty, the defendant in error, having accepted this as the division line, also built a post and wire fence on the same line along its northern end.

When it was discovered by Joseph Monnin that the eastern strip of twenty-seven acres did not belong to Francis Monnin in fee, and could not be operated upon by his will, Joseph Monnin procured W. T. Dutton, another surveyor, and ran a second line diagonally from the maple tree bearing to the westward sufficiently to touch merely the corner of the barn, and continuing in the same direction until it intersected the Brawley line, at a point eight and four tenths rods west of the post, which Joseph Monnin had set at the south end of the line surveyed by Mr. Long. To this survey Mrs. Curty objected. It would make her land eight and one half rods narrower at its south end, than at the Maple tree at the north end.

Thereupon, the plaintiff in error, Joseph Monnin, placed a wire from the maple tree to the corner of the barn, destroyed the posts and wires of the defendant in error, and entered upon the land west of the line running south from the maple tree, as surveyed by Mr. Long and afterward resurveyed by Mr. McDowell, destroying Mr. Curty's crops, doing other acts of trespass.

For these several acts of trespasses on her land the defendant in error brought this action, which raises the single question whether the correct line is the Long line running south from the maple tree or the Dutton line running diagonally past the corner of the barn.

Plaintiff submitted among others the following point:

[5. By the plain and unequivocal language of the will the eastern boundary of the plaintiff's premises is a line running south from an undisputed maple tree.   If the jury believe from the evidence that the defendant, without the consent of the plaintiff, cut or destroyed the grass, wheat or rye growing on the west side of said line running south from the said maple tree they should find the defendant guilty of trespass and the verdict should be for the plaintiff.   *Answer:* This point is affirmed, providing, as we before stated, you first find that the plaintiff, Mrs. Curty, was in possession of the premises, as we have instructed you.]   [1]

The court charged the jury in part as follows:

[The legal construction of the will is for the court, and we say to you as a matter of law, that there is not such an ambiguity in this will, under the evidence in this case, that would warrant us in saying to you that the defendant's contention is correct.   We think that the terms of the will fix the line beginning at the maple tree, and passing south, and presumably, upon that theory the parties agree that it is practically on what is known as the Long survey.]   [4] . . . .

The question, therefore, comes to the question of trespass, and if a trespass has been committed, what damage the plaintiff has sustained.]   [7]

Verdict and judgment for plaintiff for $100.   Defendant appealed.

*Errors assigned* among others were (1) in answer to plaintiff's fifth point, reciting point and answer.   (4, 7) to portions of the judge's charge, reciting same.

*H. J. Humes* and *Thomas Roddy*, for appellant.

*Manley O. Brown*, with him *James P. Colter*, for appellee.

OPINION BY BEAVER, J., July 26, 1900:

Assuming for the moment that the testator was the owner in fee of all the land of which he was in possession at the time of his death, all the requirements of his will would be met by

what is known as the Long line from the maple south to the Brawley line. This would give to the plaintiff twenty-six and one half acres instead of twenty-five, as devised by the testator in his will, and forty-eight and one half acres to the defendant instead of forty-six. The testator at the time of the making of his will and his heirs for some time subsequently seemed to have lost sight of the fact that in the Virginia Monnin lot of twenty-seven acres he had but a life estate and that as to it nothing passed by his will. As to the boundary, however, which he established between the lots of the plaintiff and the defendant, it must be run and held as if the title to the Virginia Monnin lot passed by the devise to the defendant. To hold otherwise would be to apply equitable principles to the construction of the will which would lead to endless difficulties. If an attempt were made to divide the lots devised to them between the plaintiff and the defendant, the application of equity must be carried further and include all the devises. This would be interpretation run mad.

The line fixed by the testator in his will as constituting the east line of the plaintiff's lot and the west line of the defendant's lot begins at a maple tree about which there is no dispute. It runs from the maple tree "south by Joseph Monnin's land and along south (?) line of Brawley's land," and as if further to designate the exact course of the line the testator devised to the defendant " the barn in the line between said Joseph and said Louis A. Curty." The defendant, in running the Dutton line, endeavored to comply with the description contained in the will by beginning at the maple and running just west of the barn and continuing the same course to the Brawley line, arguing that this is a practical compliance with the terms of the will as to the expression "barn on the line" but, if this were the correct line, there would have been no necessity for his making a specific devise of the barn to the defendant, because it would have been his already, being upon his land. The Long line which seems to have been acquiesced in at the time it was run is the only one which satisfies the description contained in the will and, as the trial judge in his charge very properly said, as complained of in the fourth assignment of error: " The legal construction of the will is for the court and we say to you, as a matter of

law, that there is not such an ambiguity in this will, under the evidence in this case, as would warrant us in saying to you that the defendant's contention is correct. We think that the terms of the will fix the line beginning at the maple tree and passing south and presumably upon that theory the parties agree that it is practically on what is known as the Long survey." The defendant erected part of the fence upon this line, the plaintiff the remainder. The defendant, having occupied the premises previously, surrendered the possession up to this line to the plaintiff, after the death of the testator. Having done so, he could not of his own motion again take possession without the consent of the plaintiff. In attempting to do so he became a trespasser.

The answers to points for charge complained of were correct and the charge, taken as a whole, was in no respect erroneous. This sufficiently disposes of the several specifications of error and the judgment is affirmed.